Date signed October 12, 2005



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| HOMETEST, INC. | : | Case No. 02-13401PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| ROGER SCHLOSSBERG, TRUSTEE | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 04-2225PM |
| | : | |
| PATUXENT ENVIRONMENTAL | : | |
| GROUP, INC. | : | |
| Defendant | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

This case came before the court for trial on September 21, 2005. This action filed by the Chapter 7 Trustee of the estate of Hometest, Inc. ("Hometest"), seeks to recover preferential payments made within 90 days of the filing of this bankruptcy case. The Defendant, Patuxent Environmental Group, Inc. ("PEG"), was a subcontractor or supplier of the Debtor that provided two types of services for the Debtor relating to the field of diagnostic microbiology. At issue are five separate payments aggregating $44,265.00. Four payments were for consultation services rendered by the principal of the Defendant to help market and design a promotion for the Debtor, and one payment was for a collection of bills for services known as remediation specifications, that is, for work done once a customer was on board. Defendant concedes that the final payment of $5,000.00 for consultation services is subject to recovery by the Trustee.

The Defendant also concedes that the Trustee has established a *prima facie* case of preference recovery under § 547(b) that provides:

**11 U.S.C. § 547.  Preferences**

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made--
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if--
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

However, the Defendant urges that four of the transfers are not subject to avoidance pursuant to § 547(c)(2) that provides:

**11 U.S.C. § 547.  Preferences**

(c) The trustee may not avoid under this section a transfer--
        *               *               *               *
(2) to the extent that such transfer was--
(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms[.]

Under § 547(g) of the Bankruptcy Code, the Defendant has the burden of proving the non-avoidability of the transfers based on this defense.

The Debtor filed a bankruptcy case under Chapter 11 on March 19, 2002.  The Official Committee of Unsecured Creditors filed a motion to convert the case or, in the alternative, to

appoint a Chapter 11 trustee on October 9, 2003. The court then approved the appointment of an Examiner by the United States Trustee on December 3, 2003, to investigate a proposed Compromise. The case was ultimately converted to a case under Chapter 7 on February 19, 2004. PEG filed a proof of claim in the sum of $46,051.98. It is interesting to note that PEG was scheduled by the Debtor as having a claim in the sum of $28,121.29. What stands out about PEG's claim is that of the 252 unsecured claims without priority scheduled by the Debtor, aggregating $11,996,305.14, only three are listed as "disputed." One of these disputed claims is that held by PEG.

The parties filed a Joint Pre-Trial Stipulation that aided the court in the resolution of this case. Under the Stipulation the only issue for the court to decide is whether the four payments in question were made in the ordinary course of business or financial affairs of the Debtor and PEG and made according to ordinary business terms.

Plaintiff's Exhibit No. 1 is a check, dated January 11, 2002, and deposited in Defendant's account on January 14, 2002, in the sum of $15,000.00 (the "First Check"). It is in payment of Invoice Nos. 106-78, 106-79, and 106-80, each in the sum of $5,000.00, for bi-monthly consultation services, presumably for the period ending December 31, 2001. The terms on each of these invoices are "due on receipt." Plaintiff's Exhibit No. 2 is a check, dated February 4, 2002, and deposited February 5, 2002, in the sum of $13,200.00 (the "Second Check"). This payment covered Invoice Nos. 106-76 and 106-77 for bi-monthly consultation services for the periods ending January 15, 2002, and January 31, 2002, respectively, together with Invoice No. 106-50, dated December 26, 2001, in the sum of $3,200.00 for environmental consulting. Plaintiff's Exhibit No. 3 is a check, dated February 15, 2002, and deposited February 22, 2002, in the sum of $5,000.00 (the "Third Check"). This payment is said to cover bi-monthly consultation services for the first half of February, 2002. Plaintiff's Exhibit No. 4 is a check, dated February 20, 2002, and deposited in Defendant's account on February 27, 2002, in the sum of $6,065.00 (the "Fourth Check"). It is said to be for payment of 24 entries of remediation specifications for the period January 8, 2002 through January 25, 2002, and also included payment for a bill dated January 4, 2002, in the amount of $800.00 for "Level 2 Project Management" services. The final payment, made by a wire transfer on March 14, 2002, that replaced a payment by a check returned by Debtor's bank, is admitted to be subject to avoidance as a preferential transfer.

The terms for payment of all bi-monthly consultation bills are "due on receipt", whereas the remediation specification bills are all "net 30 days." The invoice for environmental consultation services dated December 26, 2001, and the invoice for Level 2 Project Management services dated January 4, 2002, state no terms. The court notes that the bills for bi-monthly consultation services, 106-78, 106-79, and 106-80, that presumably cover the period from the beginning of the project until the end of 2001, have higher bill numbers than the bills rendered for the month of January, 2002. While there is no date for services shown on the bills, the court finds as a fact, as stated, that these bills covered the first month and a half of the project. These bills were backdated.

The first issue that the court will address is the issue of whether Defendant can rely on the ordinary course of business defense where there has been no prior history of dealings between the parties prior to the preference period. Although either side can point to ample authority in support of its position, there is no controlling authority in the Fourth Circuit. Plaintiff relies upon such cases as *In re Brown Transp. Truckload, Inc.*, 152 B.R. 690 (BC N.D. Ga. 1992), where Judge Drake granted summary judgment for the plaintiff, finding as a matter of law that, if there is no prior course of dealings between the defendant and the debtor, it cannot be found that a transfer has been made in the ordinary course of business between the two parties involved. On the opposite side of the argument are the cases of *In re Air South Airlines*, 247 B.R. 165, 171-73 (BC S.C. 2000) and *In re Finn*, 909 F.2d 903, 908 (CA6 1990). In *Air South*, the court held that the fact that there is no prior course of dealings between the parties does not automatically preclude the court from continuing its analysis. *See also* Lisa Sommers Gretchko, *Preference Primer: Is Once Enough? Is the Isolated Transaction Ordinary?* XIV Am. Bankr. Inst. J. 22 (Sept. 1995) (concluding that, while the holding in *Brown* "may be more consistent with rules of statutory construction," the holding in *Finn* "make[s] more sense than *Brown* in the business world" and also "promote[s] the legislative intent behind the ordinary business exception."). The court will follow *Air South* and base its reasoning upon the proposition that § 547(c)(2)(B) speaks of the ordinary course of business or financial affairs of, and not necessarily in between, the debtor and the transferee.

This case is thus an ordinary fact-intensive preference action. Each payment must be viewed individually. In ruling upon this case, the court notes the authority in this Circuit of *Advo-System Inc. vs. Maxway Corp.*, 37 F.3d 1044 (CA4 1994) and *In re Jeffrey Bigelow Design*

*Group, Inc.*, 956 F.2d 479 (CA4 1992).

The Bankruptcy Code does not define "ordinary course of business" or "according to ordinary business terms." The legislative history notes that the purpose of this exception is to leave undisturbed normal financial relations. S. Rep. No. 95-989 at 88 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5874. In *Bigelow*, the Fourth Circuit points out that "'courts testing a transfer for "ordinariness" under Section 547(c)(2) have generally focused on the prior conduct of the parties, the common industry practice, and, particularly, whether payment resulted from any unusual action by either the debtor or creditor.'" 956 F.2d at 486 (quoting 4 *Collier on Bankruptcy* ¶ 547.10, at 547-50 to -51 (15th ed. 1990)). Here there is no competent evidence before the court of the common industry practice.

The court finds that Defendant has not offered any competent evidence as to common industry standards or practice with respect to the payments made to consultants. The expert testimony of the Defendant's principal is entitled to no weight whatsoever on the issue of industry practice. He is not qualified to give such an opinion. After considering the billing and payment practices described, the only finding that the court can make is that there was no consistency in the parties' payment and billing practices. Almost without exception, payments were not made according to the stated terms in the invoices. Moreover, the court can find no logical explanation for the fact that the invoices for consultation services for the month of February were dated prior to the end of the periods, unlike all of the other invoices in this case. With such glaring discrepancies in Defendant's billing practices, the court finds it extremely difficult under the circumstances to get a fix on the ordinary course of financial affairs or business of the Defendant.

After a careful review of the timing between issuance of the invoices and Debtor's payments therefor, the court finds unusual the Defendant's act of backdating Invoice Nos. 106-78, 106-79, and 106-80, all of which were due on receipt and were paid by the First Check. However, the court will give the Defendant the benefit of the doubt as to that portion of the First Check pertaining to Invoice No. 106-80, dated December 31, 2001. The court finds that the Defendant has not sustained its burden with respect to Invoice No. 106-50, dated December 26, 2001, and paid from the Second Check. With respect to the remainder of the Second Check, the court finds that the portion of the payment made five days after "bill due on receipt" (covering Invoice No. 106-77), but not the portion covering Invoice No. 106-76, was made in the ordinary

course of Defendant's financial affairs.   The court finds that the Defendant prevails with respect to the Third Check.  Finally, the court will find in favor of the Defendant for all of the remediation specification charges that were encompassed in the Fourth Check, as well as for charges for the Level 2 Project Management services that were paid by that check.  A majority of this payment was made within a week of the "net 30" terms, and the court finds nothing unusual in the Debtor accumulating these relatively small charges for payment by one check.

An appropriate order will be entered.

cc:
Roger Schlossberg, Trustee, 134 West Washington Street, P.O.B. 4227, Hagerstown, MD 21741
Carol L. Hoshall, Esq., Seven St. Paul Street, Suite 1400, Baltimore, MD 21202
Charles Claxton/Kenneth Kaufman, Esq., 7910 Woodmont Ave., #650, Bethesda, MD 20814

**End of Memorandum**